**DANIEL FOSTER, Petitioner**

v.

**OLOTOA, Respondent**

No. 15-1953

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Lotopesega" in Pago Pago]

July 21, 1953

ARTHUR A. MORROW, *Chief Judge;* MALEPEAI, *Associate Judge;* and MAILO, *Temporary Associate Judge.*

Heard at Fagatogo July 6, 1953, before *Chief Judge* MOR-
ROW, *Associate Judge* MALEPEAI and *Temporary*
*Associate Judge* MAILO.

Daniel Foster *pro se;* Olotoa *pro se.*

OPINION OF THE COURT

MORROW, *Chief Judge.*

Alisa Poialii filed a petition praying for a mandatory
injunction requiring Olotoa to remove his boat house from
land which she claimed to own; also to enjoin said Olotoa
from using a path, or road, across the same land to Olo-
toa's house situated on the shore adjoining said land.

At the hearing it developed that the land involved had
been the property of Wesley Foster now deceased and that
Alisa Poialii, who has since remarried, was his widow and
that Daniel Foster and Samuel Foster were their only chil-
dren. Samuel died unmarried and without children. Upon
the foregoing appearing to the Court from the evidence,
Daniel upon motion was substituted for his mother Alisa
as plaintiff.

The land on which the boat house stands and across
which is the path, or road, hereinbefore referred to, is a
part of a larger tract at the headwaters of Pago Pago bay
named Lotopesega through which runs the main highway
from what was formerly the Naval Station to Pago Pago.
On March 31, 1897, the Supreme Court of Samoa vested
title to the land Lotopesega in Jane Sophia Foster by
Court grant, No. 852, recorded in Vol. 1, Court Grants at
pages 169–170. Jane Sophia Foster devised a part of Lo-
topesega to her grandson Heman by her will recorded in
Vol. 1, Miscellaneous Register at pages 271–272, using this
language, "I give, devise and bequeath to my grandson He-
man that piece of my land on the inland side of the main

road in Pago Pago extending from Wolbert's leasehold to the little creek." The land referred to in the will was Loto-pesega. It borders on the headwaters of Pago Pago bay.

Some years after Jane Sophia Foster's death, Heman's father, Fanene, apparently considering the land which had been devised to his son as his own, conveyed it to one Teutusi, who went into possession thereof and continued in such possession for more than 20 years, claiming the land conveyed as his individually owned property. In the case of *Gaoteote Foster et al. v. George Fiaalii*, No. 11-1952, the High Court held that this land devised to Heman became the property of Teutusi through adverse possession. Teutusi's heirs let George Fiaalii (who is Olotoa and the defendant in this case) into possession of the part of Lotopesega which was devised to Heman.

█ Jane Sophia Foster by her will devised the part of Lotopesega on the seaside of the road to her son Wesley Foster, the father of Daniel, the plaintiff. This devise reads as follows: "I give, devise and bequeath to my son Wesley Foster all that piece of my land in the village of Pago Pago on the seaward side of the main road together with all buildings, etc., appertaining thereto." As heretofore stated, the main highway running from the former naval station to Pago Pago intersects the land Lotopesega and it is the road referred to in said will. Wesley Foster died about 1944 devising this same land on the seaward side of the road to his sons Samuel and Daniel. As heretofore stated, Samuel died unmarried and without children. There was no evidence that he left a will. Under the law of inheritance his undivided interest in the land passed to his brother Daniel. The Court viewed the land Lotopesega in the presence of the parties to this case during the hearing. It is obvious to us from the testimony of the witnesses and what we observed that defendant Olotoa erected a boat house on the seaward side of the land Lotopesega which

side is now the property of plaintiff Daniel Foster. Foster has the right to have Olotoa remove said boat house from his premises.

Sometime during the recent war defendant Olotoa erected a house between the low tide mark and the high tide mark on shore land adjoining Foster's land. The erection of said house involved a considerable sum of money. We are convinced from the evidence, however, that prior to the erection of the house, Wesley Foster and his wife Alisa gave Olotoa permission to use the path or road across what was then Wesley Foster's land. The path or road across the land ran from the main highway to the house. In reliance upon this permission, Olotoa built the house and since the war has built additions to it.

During the course of the hearing, Foster indicated that he desired the Court to issue an order to Olotoa requiring Olotoa to remove his house. We shall consider his request as an amendment to the petition originally filed by his mother Alisa.

██ We think that the land below high tide mark on which Olotoa built his house belongs to the Government and not to plaintiff Foster. "By the common law, both the title and the dominion of the sea, and of rivers and arms of the sea, where the tide ebbs and flows, and of all the lands below high-water mark, within the jurisdiction of the crown of England, are in the king. Such waters, and the lands which they cover, either at all times, or at least when the tide is in, are incapable of ordinary and private occupation, cultivation, and improvement; and their natural and primary uses are public in their nature, for highways of navigation and commerce, domestic and foreign, and for the purpose of fishing by all the king's subjects. Therefore the title, *jus privatum*, in such lands, as of waste and unoccupied lands, belongs to the king, as the sovereign; and the dominion thereof, *jus publicum*, is vested in him, as the

representative of the nation and for the public benefit." Mr. Justice Gray in *Shively v. Bowlby et al.*, 152 U.S. 1, 11; 14 U.S. Sup. Ct. Rep. 548, 551. Section 1 of the Code of American Samoa provides that "The following are declared to be in full force and to have the effect of law in American Samoa: (a) such parts of the Constitution and such laws of the United States of America as shall, by their own force, be in effect in American Samoa; (b) this Code of Laws of the Government of American Samoa, amendments thereto, and executive orders, promulgated by the Governor of American Samoa; (c) so much of the common law of England as is suitable to conditions in American Samoa and not inconsistent with the aforesaid." No part of the Constitution, no law of the United States applicable in American Samoa, nor any statutory law of American Samoa is inconsistent with the common law of England on this subject. We believe that the common law of England governing ownership of the land between the high tide mark and the low tide mark is suitable to conditions in American Samoa. Since by that law the ownership of such land was in the king, it would follow that the land on which Olotoa built his house, being land below the high tide mark, is in the Government, and not in the adjoining landowner Daniel Foster. Therefore it follows that Foster has no right to have Olotoa remove his house, it not being on Foster's land. In the United States ". . . after the American Revolution, the title to the shore below high-water mark became vested in the individual states as sovereigns, subject only to the restricted constitutional powers of control of the Federal government." 56 Am.Jur. 871. We do not decide whether the land on which Olotoa built his house belongs to the Government of American Samoa or to the Government of the United States. It is not necessary.

■ The question still remains whether Foster is entitled to an order restraining Olotoa from using the path or

80

road to the house. We think he is not. In our opinion, when Wesley Foster and his wife Alisa gave Olotoa permission to use such path or road and in reliance upon such permission, he built his house between the high and low tide marks, such permission being a license became irrevocable. "In many jurisdictions where a licensee has entered under a parol license and has expended money or its equivalent in labor, it becomes irrevocable, and the licensee acquires a right of entry on the lands of the licensor for the purpose of maintaining his structures, or, in general, his rights under his license, and the license will continue for so long a time as the nature of it calls for...."

"The cases holding to this rule as to the irrevocability of certain licenses proceed on two distinct theories, one theory being that when the licensee expends large sums of money in making the improvement, and such expenditure is made without opposition by the licensor, the license becomes executed and, as such, irrevocable; and that, in fact, what was at its inception a license becomes in reality a grant. The other theory and the reason most frequently given is that after the execution of the license, it would be a fraud on the licensee to permit a revocation; and the principles of equitable estoppel are invoked to prevent what would work a great hardship in many instances." 33 Am. Jur. 408. There is a line of cases holding that even though expenditures have been made in reliance on the license it may nevertheless be revoked. 33 Am.Jur. 410. We think the rule that the license becomes irrevocable where the licensee has expended money in reliance thereon making it inequitable to revoke it is the better rule and we have adopted it in prior cases.

### DECREE

Accordingly, it is DECREED that Olotoa shall remove his boat house from that part of the land Lotopesega which

is the property of Daniel Foster, such removal to be made within thirty (30) days.

The amendment to the petition asking for an order requiring Olotoa to remove his house from the shore adjoining the land Lotopesega is hereby denied; and that part of the petition praying for an order to enjoin Olotoa from using the path or road leading from the main highway across the land of Daniel Foster on the seaward side of the highway to Olotoa's house is likewise denied.

Court costs in the sum of $12.50 are hereby assessed against Olotoa, the same to be paid within thirty (30) days.

Olotoa is hereby ORDERED to pay to Alisa Poialii $5.00, this being the amount of the fee paid by her in filing the petition.